# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, Plaintiff, vs. JONATHAN CURTIS YOUNGBEAR, Defendant. | No. 14-CR-46-LRR <br><br> **ORDER** |

_____

## TABLE OF CONTENTS

- *I.   INTRODUCTION.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2**
- *II.  RELEVANT PROCEDURAL BACKGROUND.* . . . . . . . . . . . . . . . . . . . . . **2**
- *III. STANDARD OF REVIEW.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2**
- *IV.  RELEVANT FACTUAL BACKGROUND.* . . . . . . . . . . . . . . . . . . . . . . . . **3**
- *V.   ANALYSIS.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **4**
    - *A.  Warrantless Entry into Residence.* . . . . . . . . . . . . . . . . . . . . . . . **5**
        - *1.  Legality of warrantless entry.* . . . . . . . . . . . . . . . . . . . . . . **5**
            - *a.  Parties' argument.* . . . . . . . . . . . . . . . . . . . . . . **5**
            - *b.  Applicable law.* . . . . . . . . . . . . . . . . . . . . . . . **5**
            - *c.  Application.* . . . . . . . . . . . . . . . . . . . . . . . . . **6**
        - *2.  Search warrant..* . . . . . . . . . . . . . . . . . . . . . . . . . . . . **7**
    - *B.  Defendant's Statements..* . . . . . . . . . . . . . . . . . . . . . . . . . . . **8**
        - *1.  Alleged Miranda violations.* . . . . . . . . . . . . . . . . . . . . . . **8**
            - *a.  Voluntary, knowing and intelligent waiver.* . . . . . . **8**
            - *b.  Defendant's invocation of right to remain silent.* . . . . . . . . . . . . . . . . . . . . . . . . . . . **9**
        - *2.  Alleged Due Process Clause violation* .. . . . . . . . . . . . . . . . **11**
- *VI.  CONCLUSION.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **12**

# I. INTRODUCTION

The matter before the court is Defendant Jonathan Curtis Youngbear's Objections (docket no. 52) to United States Chief Magistrate Judge Jon S. Scoles's Report and Recommendation (docket no. 47), which recommends that the court deny with one limited exception Defendant's Motion to Suppress (docket no. 27).

# II. RELEVANT PROCEDURAL BACKGROUND

On April 23, 2014, a grand jury returned an Indictment (docket no. 2) charging Defendant with first degree murder within Indian Country in violation of 18 U.S.C. § 1111. On October 14, 2014, Defendant filed the Motion. On October 31, 2014, the government filed a Resistance (docket no. 39). On November 10, 2014, Judge Scoles held a hearing on the Motion. *See* November 10, 2014 Minute Entry (docket no. 41). Defendant appeared in court with his attorneys Diane Helphrey and Timothy S. Ross-Boon. Assistant United States Attorneys Peter E. Deegan, Jr. and Anthony Morfitt represented the government. On November 25, 2014, Judge Scoles issued his Report and Recommendation, which recommends that the court deny the motion with one limited exception. On December 9, 2014, Defendant filed his Objections. On December 16, 2014, the government filed a Response to the Objections (docket no. 53). The Report and Recommendation and the Objections are fully submitted and ready for decision.

# III. STANDARD OF REVIEW

When a party files a timely objection to a magistrate judge's report and recommendation, a "judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Crim. P. 59(b)(3) ("The district judge must consider de novo any objection to the magistrate judge's recommendation."); *United States v. Lothridge*, 324 F.3d 599, 600 (8th Cir. 2003) (noting that a district judge must "undertake[] a de novo review of the disputed portions of a

2

magistrate judge's report and recommendations"). "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Crim. P. 59(b)(3) ("The district judge may accept, reject, or modify the recommendation, receive further evidence, or resubmit the matter to the magistrate judge with instructions."). It is reversible error for a district court to fail to engage in a de novo review of a magistrate judge's report when such review is required. *Lothridge*, 324 F.3d at 600. Accordingly, the court reviews the disputed portions of the Report and Recommendation de novo.

## IV. RELEVANT FACTUAL BACKGROUND[1]

On February 24, 2014, Danielle Davenport contacted the Tama County Sheriff's Office to report that Joseph Youngbear—who had run from Defendant's house to Davenport's—had stabbed Severn Jefferson and that Defendant was still in the house. Dispatch informed law enforcement that Defendant was still in the house and had access to a rifle. Officers arrived some distance from the house, where they stopped to determine the nature of the threat. Defendant exited the house with his hands up and with what appeared to be dried blood on his hands. As law enforcement approached the house, officers observed fresh bloody footprints in the snow and on the porch. Officers asked Defendant whether anyone else was in the house, to which Defendant replied "two." Officers entered the house, discovered the body of Severn Jefferson as well as a long, bloody knife in plain view on the kitchen floor. Law enforcement left the house and spoke with Joseph Youngbear, who informed the officers that several people were drinking alcohol and smoking methamphetamine when Defendant stabbed Severn Jefferson. Based

---

[1] After reviewing the hearing transcript, the court finds that Judge Scoles accurately and thoroughly set forth the relevant facts in the Report and Recommendation. *See* Report and Recommendation at 2-15. Accordingly, the court only briefly summarizes the facts. When relevant, the court relies on and discusses additional facts in conjunction with its legal analysis.

on all of the above information, officers prepared an affidavit and obtained a search warrant.

While some officers were obtaining the search warrant, other officers transported Defendant to the Tama County Sheriff's Office at approximately 5:41 p.m., at which time officers noted that Defendant was intoxicated and uncooperative. Defendant remained alone in an interview room until 12:07 a.m., for a total time of approximately five hours and forty-three minutes. During such time, Defendant appeared to have urinated in his clothing.

At 12:15 a.m., officers entered the interview room and advised Defendant of his *Miranda* rights by reviewing each right on a printed form. Officers explained each right to Defendant, asked if he understood, and Defendant initialed each right. Defendant stated that he understood his rights and wished to speak to the officers, and he signed a waiver of his *Miranda* rights at 12:19 a.m. During the interview, Defendant stated that he had used methamphetamine, had been drinking rum and had not slept for three or four days. During the interview, Defendant made a number of incriminating statements. At one point during the interview, one of the officers suggested that Defendant could use "grace from somewhere from other than right here." Report and Recommendation at 11. The officer went on to tell Defendant that there was still hope inside him, and that in some way the victim may be listening right now. Defendant made additional incriminating statements in response to this line of questioning.

## V. ANALYSIS

Defendant does not object to the recitation of facts in the Report and Recommendation. *See* Objections at 2 ("[Defendant] does not object to the Findings of Fact in the Report and Recommendation."). Instead, Defendant objects to Judge Scoles's legal conclusions that: (1) the officers' warrantless entry into the residence was supported by probable cause and exigent circumstances; (2) the search warrant was not tainted by the

4

alleged illegal entry into the residence; (3) Defendant voluntarily, knowingly and intelligently waived his *Miranda* rights; (4) Defendant's statements were not coerced in violation of the due process clause; and (5) Defendant did not effectively invoke his right to remain silent. *See id*. at 1.

### A. Warrantless Entry into Residence

Defendant objects to Judge Scoles's conclusion that the officers' warrantless entry into the residence did not violate the Fourth Amendment. Defendant goes on to argue that "[i]f the evidence obtained from the illegal entry is removed from the facts included in the search warrant affidavit, insufficient evidence existed to support a probable cause determination" necessary to support the issued search warrant. Objections at 5.

#### 1. *Legality of warrantless entry*

##### a. *Parties' arguments*

Defendant argues that Judge Scoles erroneously concluded that the officers' initial entry into the residence did not violate the Fourth Amendment because "[a]t the point of the entry . . . there was insufficient evidence known to the officers beyond what had been reported over the dispatch calls regarding the purported statements of Joseph Youngbear, an alleged witness, to his aunt." Objections at 2. Defendant also argues that even if the entry was reasonable, officers exceeded the scope of the entry. The government argues that the officers' entry did not violate the Fourth Amendment because the entry was supported by probable cause and there were exigent circumstances and that the officers did not exceed the scope of the entry.

##### b. *Applicable law*

"[S]earches and seizures inside a home without a warrant are presumptively unreasonable . . . [although] this presumption may be overcome in some circumstances." *Kentucky v. King*, ___ U.S. ___, ___, 131 S. Ct. 1849, 1856 (2011) (internal quotation marks and citations omitted). "One well-recognized exception applies when 'the

5

exigencies of the situation make the needs of law enforcement so compelling that [a] warrantless search is objectively reasonable under the Fourth Amendment." *Id.* (quoting *Mincey v. Arizona*, 437 U.S. 385, 394 (1978)) (internal quotation marks omitted) (alteration in original). One such exigent circumstance is the emergency aid exception when "officers may enter a home without a warrant to render emergency assistance to an injured occupant or to protect an occupant from imminent injury." *Id.* (quoting *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006)) (internal quotation marks omitted). This exception "justifies immediate police action without obtaining a warrant if lives are threatened." *United States v. Cisneros-Gutierrez*, 598 F.3d 997, 1004 (8th Cir. 2010) (quoting *United States v. Ball*, 90 F.3d 260, 263 (8th Cir. 1996)) (internal quotation marks omitted). The government has the burden to show the existence of probable cause and exigent circumstances. *See Welsh v. Wisconsin*, 466 U.S. 740, 750 (1984).

"Probable cause . . . exi[s]ts if there is 'a fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Donnell*, 726 F.3d 1054, 1056 (8th Cir. 2013) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). In determining whether probable cause exists, courts look to the totality of the circumstances and "apply a common sense approach . . . considering all relevant circumstances." *United States v. Hager*, 710 F.3d 830, 836 (8th Cir. 2013) (quoting *United States v. Gleich*, 397 F.3d 608, 612 (8th Cir. 2005)) (internal quotation marks omitted).

### c. *Application*

After conducting a de novo review of the record, the court agrees with Judge Scoles that the government has shown both probable cause and exigent circumstances made the officers' entry into the home reasonable under the Fourth Amendment. Without regurgitating all of Judge Scoles's reasoning, the court agrees that officers corroborated Joseph Youngbear's "information that Defendant had stabbed Severn Jefferson, and [that]

a reasonable officer could infer that the stabbing victim was still inside the house." Report and Recommendation at 18. This information gave the officers "a fair probability that contraband or evidence of a crime" would be found in the residence. *Gates*, 462 U.S. at 238. Moreover, the court agrees with Judge Scoles that "[i]t is *not* reasonable to require law enforcement to obtain a search warrant to enter a house when they can reasonably infer that a victim of a violent crime may be inside and in need of assistance." Report and Recommendation at 19. The court also agrees with Judge Scoles that the officers did not exceed the scope of the exigency. This case is markedly different than *Mincey v. Arizona*, 437 U.S. 385 (1978), on which Defendant relies in his Objections. In *Mincey*, officers thoroughly searched the defendant's apartment over the course of four days. *Mincey*, 437 U.S. at 389. Here, the officers were responding to the scene of a violent crime; when they arrived, Defendant stated that there were two persons in the house, and officers had reason to believe the house also contained firearms. The officers entered the house, conducted a protective sweep, and "after it was established that there were no other persons in the house (except [Severn] Jefferson) and medical personnel pronounced [Severn Jefferson] dead, officers then left the premises" to obtain a search warrant. Report and Recommendation at 20. Accordingly, the court finds that the officers' search of the residence comported with the Fourth Amendment.

  *2. Search warrant*

  Defendant objects to Judge Scoles's conclusion that if the officers' entry into the house was illegal, the search warrant was not supported by probable cause and, thus, was invalid. However, in light of the court's finding that the officers' entry into the residence was lawful, the affidavit in support of the search warrant did not contain tainted evidence.

Because the allegations in the application for search warrant support a finding of probable cause, the court shall overrule Defendant's objection to this finding.[2]

## B. Defendant's Statements

Defendant argues that Judge Scoles erroneously found that Defendant voluntarily, knowingly and intelligently waived his *Miranda* rights and that Defendant did not effectively invoke his right to remain silent. Finally, Defendant argues that Judge Scoles erroneously found that Defendant's statements were voluntary under the Due Process Clause.

### 1. Alleged **Miranda** *violations*

#### a. *Voluntary, knowing and intelligent waiver*

Defendant argues that the waiver of his *Miranda* rights was not voluntarily, knowingly and intelligently made because the "purported waiver . . . occurred more than 6 hours after law enforcement encountered [Defendant] in a state of intoxication in which he had very poor balance, slurred speech, and belligerent behaviors." Objections at 7.

Whether a defendant has voluntarily, knowingly and intelligently waived his or her *Miranda* rights

> has two distinct dimensions. First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the "totality of the circumstances surrounding the interrogation" reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived.

---

[2] Even if the court had not made this finding, the court agrees with Judge Scoles that the search warrant was nonetheless still valid for the reasons more fully set forth in the Report and Recommendation. *See* Report and Recommendation at 21-28.

8

*Moran v. Burbine*, 475 U.S. 412, 421 (1986) (quoting *Fare v. Michael C.*, 442 U.S. 707, 725 (1979)) (internal citations omitted).

Here, Defendant's blood alcohol level was "between .077 and .137 when the interview began," and "[a]t that level, an individual would be experiencing some effects of alcohol; with the extent of the impairment depending, in part, on the person's drinking history." Report and Recommendation at 32. "Defendant also tested positive for methamphetamine and amphetamine." *Id.* In addition, Defendant apparently had not slept for three to four days prior to the interview, although he appeared to sleep for a period of time between booking and the interview. Despite Defendant's contention that he was too intoxicated to voluntarily, knowingly and intentionally waive his *Miranda* rights, law enforcement testified that Defendant did not exhibit any outward signs of intoxication during the interview, and after reviewing the videotape, the court agrees with law enforcement. In addition, the record contains no evidence that law enforcement used "intimidation, coercion, or deception." *Burbine*, 475 U.S. at 421. For these reasons, and for the reasons more fully articulated by Judge Scoles in his Report and Recommendation, the court agrees with Judge Scoles that Defendant voluntarily, knowingly and intelligently waived his *Miranda* rights.

### b. *Defendant's invocation of right to remain silent*

Defendant argues that Judge Scoles erroneously found that he did not invoke his right to remain silent because Defendant's statement "I don't want to talk about this anymore" was clear and unequivocal.

When a Defendant invokes his or her right to remain silent, officers must scrupulously honor that request by cutting off questioning. *See Michigan v. Mosley*, 423 U.S. 96, 103-04 (1975). However, this requirement is only triggered when a defendant adequately invokes his or her right to remain silent. "Indirect, ambiguous, and equivocal statements or assertions of an intent to exercise the right to remain silent are not enough

to invoke that right for the purposes of *Miranda*." *United States v. Ferrer-Montoya*, 483 F.3d 565, 569 (8th Cir. 2007). "The question of whether a suspect invoked his [or her] right to remain silent is a factual determination for the district court." *Id.*

Here, a law enforcement officer asked Defendant where the victim was located when Defendant struck the victim. In response, Defendant stated "I don't want to talk about this anymore." The law enforcement officer then asked Defendant whether he would answer other questions not pertaining to where Defendant hit the victim, and Defendant stated he was willing to answer other questions. The court agrees with Judge Scoles that Defendant's statement "I don't want to talk about this anymore" was a qualified statement. That is, based on the officer's follow-up questions, Defendant's statement meant that he did not wish to talk about questions pertaining to hitting the victim. Because Defendant's statement was equivocal, the officer properly clarified what Defendant was asking. *See Davis v. United States*, 512 U.S. 452, 459 (1994) ("[I]f a suspect makes a reference to [invoking one of the *Miranda* rights] that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect *might* be invoking the right . . . , our precedents do not require the cessation of questioning."); *id.* at 461 ("Of course, when a suspect makes an ambiguous or equivocal statement it will often be good police practice for the interviewing officers to clarify whether or not he actually wants [to invoke the *Miranda* right].").

The court agrees with Judge Scoles that Defendant adequately invoked his right to remain silent with respect to questions regarding the assault on the victim. By subsequently asking Defendant questions about this topic after Defendant stated that he did not wish to talk about it, the officer did not scrupulously honor Defendant's invocation of his right to remain silent with respect to this topic only. Accordingly, the court shall overrule the Objections and adopt the Report and Recommendation in full with respect to the alleged *Miranda* violations.

## 2. *Alleged Due Process Clause violation*

Finally, Defendant objects to Judge Scoles's conclusion that Defendant's statements were voluntary under the Due Process Clause. The crux of Defendant's objection is that the conditions under which he was detained—he had consumed methamphetamine and alcohol for a period of days prior to his arrest, he was under the influence of alcohol at the time police interrogated him, he had no food and little water and he was confined to the interrogation room for approximately six hours—created a coercive environment and that officers employed "the subtle use of religious and spiritual references," frequently complimented Defendant "for having the courage to talk to him" and showed other signs of compassion. Objections at 9-10.

As the Eighth Circuit Court of Appeals explained in *United States v. Boslau*, the Due Process Clause is violated when a statement is involuntary.

> A statement is involuntary when it was extracted by threats, violence, or express or implied promises sufficient to overbear the defendant's will and critically impair his capacity for self-determination. We discern whether a confession is voluntary under the totality of the circumstances, examining both the conduct of the officers and the characteristics of the accused. We consider, among other things, the degree of police coercion, the length of the interrogation, its location, its continuity, and the defendant's maturity, education, physical condition, and mental condition. The mere fact that an officer may have elicited a confession through a variety of tactics, including claiming not to believe a suspect's explanations, making false promises, playing on a suspect's emotions, using his respect for his family against him, deceiving the suspect, conveying sympathy, and even using raised voices, does not render a confession involuntary unless the overall impact of the interrogation caused the defendant's will to be overborne. The government bears the burden of persuasion and must prove by a preponderance of the evidence that the challenged statements were voluntary.

*United States v. Boslau*, 632 F.3d 422, 428-29 (8th Cir. 2011) (internal citations and quotation marks omitted).

The court agrees with Judge Scoles. There was not "coercive activity by the police sufficient to overcome Defendant's free will, even considering his impaired mental state." Report and Recommendation at 38. While Defendant relies heavily on the fact that he was intoxicated during the interview, the record shows that he had not consumed alcohol "for at least 7½ hours prior to the interrogation" and his blood-alcohol content was estimated at approximately 0.109. Report and Recommendation at 36-37. The methamphetamine in his system at the time of the interview was found to be at a therapeutic level. Moreover, the court has reviewed the video and agrees with Judge Scoles that Defendant responded appropriately to the officers' questions, as he was able to give his name, age, date of birth, education and cell phone number. Defendant, although certainly somewhat intoxicated, was not so intoxicated as to render his statements involuntary. In short, the government has met its burden of proof by a preponderance of the evidence that Defendant's statements were voluntary under the Due Process Clause.

## *VI. CONCLUSION*

In light of the foregoing, the court **ORDERS**:

(1) The Objections (docket no. 52) are **OVERRULED**;

(2) The Report and Recommendation (docket no. 47) is **ADOPTED**; and

(3) The Motion to Suppress (docket no. 27) is **DENIED IN PART** and **GRANTED IN PART**.

**DATED** this 21st day of January, 2015.

LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA